Filed 12/29/22  P. v. Ramos CA2/8
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B304575 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA079316) |
| v. | |
| OSVALDO RAMOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Bruce F. Marrs, Judge.  Reversed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

On August 2, 2021, we affirmed the summary denial of Osvaldo Ramos's petition for resentencing under Penal Code[1] section 1170.95,[2] which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. (*People v. Lewis* (2021) 11 Cal.5th 952.) Ramos was convicted in 2009 of the first degree murder of Mychael Whittaker (§ 187, subd. (a)) and the jury found true the special circumstance allegation that Ramos murdered Whittaker while engaged in the commission of a robbery (§190.2, subd. (a)(17)) along with other gang and firearm enhancement allegations. Ramos argued the trial court erroneously denied his petition because the true finding on the robbery-murder special-circumstance allegation no longer supports his felony murder conviction. He argued the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) substantially changed the law related to felony murder and so he is entitled to an evidentiary hearing on his resentencing petition.

On October 26, 2022, the California Supreme Court ordered us to vacate our decision and "reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698. (Cal. Rules of Court, rule 8.528(d).)" We now do so and reverse the order of the trial court denying Ramos's petition.

---

[1]     Further section references are to the Penal Code.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10) We refer to the current section 1172.6 in this opinion.

# FACTS

We recite the relevant facts and procedural history from our prior opinion in this case:

Whittaker was killed on April 8, 2007, after suffering four gunshot wounds to his head and face. He was found lying partially inside of a car and partially on the street with his pockets inside out. Investigating officers found a baggie containing what was later identified as crack cocaine in the car. A partial palm print from the car's rear passenger window matched Ramos's.

In late May 2007, officers interviewed Ramos about the murder. He initially claimed he did not know Whittaker, but later admitted he was involved in Whittaker's death. Ramos told officers he and two other men—Edwin Cruz and Cesar Miranda—ordered drugs from Whittaker and planned to rob him. When Whittaker came to their location, Ramos walked to the car while Cruz and Miranda hid in an alley and watched. After Ramos walked up to Whittaker's car, Cruz came out of the alley and shot Whittaker in the head. Ramos said Cruz had shown him a gun before Whittaker arrived. Ramos insisted he never went to the passenger side of Whittaker's car, where two gun cartridge casings were found.

At trial, a gang expert opined Ramos was an active member of the 12th Street gang. Victor Tejeda[3] testified he, Cruz, and Ramos were members of the 12th Street Pomona gang. Sometime after April 2007, Cruz told Tejeda he and Ramos

---

[3]     Tejeda testified in Ramos's first trial, which resulted in a mistrial. Tejeda was later killed in an altercation with the police and his trial testimony was read to the second jury.

3

robbed and killed Whittaker. Cruz bragged to Tejeda, "We killed that nigger." Cruz did not say who shot Whittaker. Cruz said Whittaker tried to jump out of the car after he was shot but Ramos stopped him and tried to keep the car door closed. Cruz told Tejeda he and Ramos robbed Whittaker and emptied out his pockets, then smoked the drugs they found. On cross-examination, Tejeda admitted that the 12th Street gang had been trying to kill him. Cruz was involved in an incident in which Tejeda was shot and left for dead by his own gang.

Ramos testified on his own behalf. He denied he was a gang member. He testified Cruz shot Whittaker and then threatened him with the gun to find Whittaker's drugs. Cruz also told him not to say anything about the murder. Cruz's friends beat Ramos in the county jail because he told police what had happened.

The jury found Ramos guilty of one count of first degree murder (§ 187, subd. (a).) The jury also found true the following: a special circumstance allegation that Ramos murdered Whittaker while engaged in the commission of robbery in violation of sections 211 and 212.5 (§ 190.2, subd. (a)(17)); a gang enhancement allegation (§ 186.22, subd. (b)(1)(C)); an allegation that a principal personally and intentionally discharged a firearm which proximately caused Whittaker's death (§ 12022.53, subds. (d), (e)(1)); an allegation that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)); and an allegation that a principal used a firearm (§ 12022.53, subds. (b), (e)(1)). The jury was unable to reach a verdict on the special circumstance allegation that Ramos intentionally killed Whittaker while Ramos was an active participant in a criminal street gang and the murder was carried out to further the

4

activities of the criminal street gang within the meaning of section 190.2, subdivision (a)(22). The trial court declared a mistrial as to that allegation. The court sentenced Ramos to a total prison term of life without the possibility of parole on the murder count plus 25 years to life on the firearm enhancement.

Ramos appealed, asserting various evidentiary errors required reversal. We affirmed the judgment. (*People v. Ramos* (Mar. 28, 2011, B215127) [nonpub. opn.].) On March 13, 2019, Ramos filed a petition for resentencing pursuant to section 1172.6. He asserted he did not actually kill the victim or possess the requisite mental state to be guilty of murder as redefined by Senate Bill No. 1437 (Senate Bill 1437). The court appointed counsel to represent Ramos. The People opposed Ramos's petition, arguing Senate Bill 1437 was unconstitutional and Ramos did not qualify for resentencing because the jury found he was a major participant in the underlying felony who acted with reckless indifference to human life. Counsel filed a reply to the opposition. The trial court found Senate Bill 1437 unconstitutional and denied Ramos's petition on that ground. Ramos timely appealed.

## DISCUSSION

I.   **Senate Bill 1437**

Effective January 1, 2019, Sentate Bill 1437 "was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019), 31 Cal.App.5th 719, 723.) Senate Bill

5

1437 amended sections 188 and 189 and added "section 1170.95 [now 1172.6], which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2–4.)" (*Martinez*, at pp. 722–723.)

Section 1172.6 creates a multi-step procedure for a defendant to petition for resentencing pursuant to Senate Bill 1437. A defendant may petition for resentencing if he or she was "convicted of felony murder or murder under a natural and probable consequences doctrine" and the following conditions are met: (1) A charging document was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) The petitioner was convicted of first or second degree murder following a trial or an accepted plea; and (3) The petitioner could "not presently be convicted of murder or attempted murder because of changes to Section[s] 188 or 189" made by Senate Bill 1437. (§ 1172.6, subd. (a).) Under section 1172.6, subdivision (b), the petition must include: a declaration from the petitioner that he or she is eligible for relief under the statute, the superior court's case number and year of conviction, and a statement as to whether the petitioner requests appointment of counsel. (*Id.*, subd. (b)(1).) If any of the information is missing from the petition and "cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (*Id.*, subd. (b)(2).)

After the defendant files and serves a complete petition, the "prosecutor shall file and serve a response. The petitioner may

6

file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner has made a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

Should the court issue an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subd. (d)(1).) If the court vacates the murder conviction, the court must resentence the defendant on the remaining counts, or, if no target offense was charged, the "petitioner's [murder] conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." *(Id.*, subd. (d)(3), (e).)

II.    **Ramos Is Entitled to a Prima Facie Review of His Petition for Resentencing**

Ramos argues the trial court erred in finding Senate Bill 1437 unconstitutional. The People concede Senate Bill 1437 is not unconstitutional. We agree. (*People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246.)

In our prior opinion we also decided that the jury's true finding on the felony murder special circumstance precludes relief even after the passage of Senate Bill 1437. Here, the second jury in Ramos's case found him guilty of first degree felony murder and found true the robbery-murder special

7

circumstance in section 190.2, subdivision (a)(17).  In doing so, the jury necessarily found Ramos was the actual killer, acted with intent to kill, or acted as a major participant in the underlying felony with reckless indifference to human life. Senate Bill 1437 amended section 189, subdivision (e) to now require these same three theories in order to be found guilty of felony murder.  Accordingly, we concluded the true finding for the felony murder special circumstance precluded relief even after the passage of Senate Bill 1437.

After we rejected appellant's claims in our previous opinion, our Supreme Court decided *People v. Strong, supra*, 13 Cal.5th 698 (*Strong*).  In *Strong,* the Court held that a true finding on a felony murder special circumstance allegation rendered prior to the *Banks* and *Clark* decisions does not preclude, as a matter of law, resentencing relief under section 1172.6.  (*Strong,* at p. 710.)  The court reasoned *Banks* and *Clark* represent the type of significant change in law traditionally found to warrant a re-examination of earlier litigated decisions. (*Strong, supra*, 13 Cal.5th at pp. 717-718.)

Here, the judgment on the true findings for the special circumstance allegation was entered in 2009, before *Banks* and *Clark* were decided.  The People concede that remand is required and we agree.  Accordingly, we reverse the trial court's summary denial of appellant's 1172.6 petition and remand the matter to the trial court to conduct a new prima facie hearing and, if appropriate, issue an order to show cause and set an evidentiary hearing under section 1172.6, subdivision (d).

III.    **Ramos Is Not Entitled to Relief Under Senate Bill No. 620**

In his reply brief, Ramos requests we remand for the trial court to exercise its discretion to strike or dismiss the firearm enhancement pursuant to Senate Bill No. 620 (Senate Bill 620) (2017–2018 Reg. Sess.), which amended section 12022.53, subdivision (h) to provide trial courts with this discretion.  Senate Bill 620, effective January 1, 2018, applies retroactively only to judgments that were not yet final on its effective date.  (*People v. Harris* (2018) 22 Cal.App.5th 657, 659.)  The Legislature could have, but did not, "provide a specific procedure via petition or motion to reopen final cases for resentencing."  (*Id*. at p. 662.) A case is final when the time for petitioning the United States Supreme Court for a writ of certiorari expires.  (See *People v. Vieira* (2005) 35 Cal.4th 264, 306; see also *Bowles v. Russell* (2007) 551 U.S. 205, 212.)

Ramos was convicted in 2009 and we affirmed his conviction in 2011.  He does not contend his case is not final. Indeed, the judgment against him was final years before the January 1, 2018 effective date of Senate Bill 620.  Under these circumstances, we decline to remand for the trial court to exercise its discretion under Senate Bill 620.

## DISPOSITION

The order is reversed.  The trial court is directed to find a prima facie showing, issue an order to show cause, and conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES,  J.


WILEY, J.

10